UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 09-CV-0308-CVE-TLW |
| ANDREW A. MATHIS, DAVID COX, STACEY KIOUS, on behalf of K. Kious and J. Cox Kious, minor children and next of kin of Dennis Cox, deceased, MIKE MILLER, RUBI LOPEZ, personally and on behalf of the estate of Carlos Lopez, AMPARO LOPEZ, CARLOS A. LOPEZ, RAJNEEL NAICKER, RANDY MCBROOM, and ROGER JOHNSON, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is State Farm's Motion for Summary Judgment (Dkt. # 37). State Farm Mutual Automobile Insurance Company (State Farm) filed a complaint for declaratory judgment (Dkt. # 2) seeking a declaration that it has no duty to indemnify or defend Mathis against claims asserted by the other defendants. State Farm requests summary judgment, arguing that the automobile insurance policy it issued to Mathis does not cover the incident for which the other defendants have sued him. The defendants[1] argue that there are genuine issues of material fact which preclude a determination of insurance coverage.

---

[1]  Defendants Cox, Kious, Miller, Amparo Lopez and Carlos Lopez filed a response to State Farm's motion for summary judgment (Dkt. # 41), and Rubi Lopez filed a separate response (Dkt. # 42). The Court will refer to arguments raised in these responses as the defendants' arguments, even though not all defendants have raised them.

**I.**

This case arises out of an incident on or about November 1, 2008 in which a car driven by Mathis entered a group of people in a parking lot. The car struck and injured several people, and killed Dennis Cox and Carlos Lopez. Mathis has been charged in state court with two counts of murder in the first degree and five counts of assault and battery in connection with the incident. Dkt. # 38-4, at 1. Mathis' criminal case is currently pending. See Dkt. ## 41-4; 42-2.

State Farm issued Mathis an automobile insurance policy (the policy) which was in effect on November 1, 2008. Dkt. # 38-11, at 1. The policy provides indemnification for certain damages that an insured becomes legally liable to pay, and provides for defense of lawsuits that seek damages payable under the policy's coverage. Dkt. # 38-11, at 10.

There are also three civil lawsuits pending in state court: David Cox and Stacy Kious filed a suit against Mathis for negligence and wrongful death, Dkt. # 38-7; Miller filed a suit against Mathis for negligence, Dkt. # 38-8; and Rubi Lopez filed a suit against Mathis for negligence, battery, and wrongful death, Dkt. # 38-9. Carlos Lopez and Amparo Lopez petitioned to intervene in Rubi Lopez's suit. Dkt. # 38-10. In addition, State Farm alleges that Naicker, McBroom, and Johnson each claims he has suffered personal injuries because of Mathis' actions, but they have not filed suit. Dkt. # 2, at 4. State Farm seeks a declaratory judgment that it has no duty to indemnify or defend Mathis against any claims asserted by defendants arising out of the November 1, 2008 incident. Dkt. # 2, at 10.

2

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

State Farm argues that it has no duty to indemnify or defend against claims arising out of the November 1, 2008 incident because those claims are not covered under the policy. State Farm argues that the incident was not an "accident," and that it falls under the policy's exclusion for intentional acts. The defendants argue that there are genuine issues of material fact regarding Mathis' intent during the incident which preclude summary judgment.

**A.     Insurance Contract Construction**

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law). In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering Co. v. U.S. Fid. and Guar. Co., 912 P.2d 861, 869 (Okla. 1996). The insured has the burden of showing that its claim is covered under the policy. See U.S. Fid. and Guar. Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon); see also Pitman v. Blue Cross and Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000) ("the insured has the burden of showing that a covered loss has occurred"). Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Pitman, 217 F.3d at 1298.

In interpreting the policy, this Court applies the Oklahoma rules of construction. See id. at 1230. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas.

4

Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True, 912 P.2d at 869. However, the Oklahoma courts "will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered," and neither a "split in authority over whether a certain term is ambiguous," nor "the fact that the parties disagree" alone is sufficient to establish an ambiguity. BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835-36 (Okla. 2005).

"The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 377 (Okla. 1991). Any exclusions to general coverage:

> are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.

Id. (footnotes omitted).

**B.     The Policy**

The policy at issue in this case states that State Farm will pay "damages an insured becomes legally liable to pay because of: (1) bodily injury to others . . . caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy" and "court costs charged to an insured and resulting from that part of a lawsuit: (1) that seeks damages payable under this policy's Liability Coverage; and (2) against which we defend an insured with attorneys chosen by us." Dkt. # 38-11, at 10. (emphasis omitted). The policy does not define "accident."

The first exclusion under the "Liability Coverage" section states that "there is no coverage for an insured . . . [w]ho intentionally causes bodily injury . . . ." Id. at 11.

**C.     Coverage**

State Farm argues that the defendants' claims are not covered because they are not for bodily injury "caused by an accident" and because Mathis intentionally caused the bodily injury.[2] The defendants argue that there are genuine issues of material fact as to whether the incident was an accident, and whether Mathis intentionally caused the injury.

The Oklahoma Supreme Court has noted that "the words 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." Briscoe, 239 P.2d at 756. The term "accident" describes "an occurrence which is unexpected, unintended and unforeseen in the eyes of the insured." Willard v. Kelley, 803 P.2d 1124, 1128-29

---

[2]     Although State Farm is correct that the person invoking coverage has the burden of showing that its claim is covered, Briscoe, 239 P.2d at 756, State Farm, as the moving party, has the burden of establishing entitlement to summary judgment. Further, to the extent that State Farm relies on the intentional acts exclusion, it has the burden of showing that an exclusion applies. Pitman, 217 F.3d at 1298.

6

(Okla. 1990). The meaning of "foreseeable" in the insurance context is not the same as in the tort context. Cranfill v. Aetna Life Ins. Co., 49 P.3d 703, 707 (Okla. 2002). "It is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental." Id.

State Farm argues that any reasonable person would expect bodily injury to result from driving a car into a crowd of people. For this reason, State Farm argues that the injuries were not caused by an accident, and that they were caused by intentional acts. Even if this were a correct characterization of Oklahoma law,[3] State Farm would not be entitled to summary judgment. There are genuine issues of material fact as to whether Mathis intended to drive his car into the crowd, let alone whether he intended to cause harm. Mathis' criminal charges are pending. The fact that Mathis has been charged with intentional actions does not prove that he acted intentionally. State Farm points to testimony from the preliminary hearing in Mathis' criminal case from which it could be inferred that Mathis acted intentionally. See Dkt. # 38, at 7-16. However, on summary judgment all inferences must be drawn in favor of the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). Testimony at a criminal pretrial about what Mathis' intent appeared to be is not undisputed evidence of Mathis' intent. Further, at that hearing there was also testimony that Mathis

---

[3] State Farm acknowledges that in Lumbermens Mutual Insurance Co. v. Blackburn, 477 P.2d 62, 65 (Okla. 1970), the Oklahoma Supreme Court determined that an intentional acts exclusion applied only where "the intention of the person, whose act caused the injury [was] 'to inflict the injury actually inflicted and [was] directed against' the party injured 'and not against another' or against a group of individuals." This case strongly suggests that intent to injure is relevant to insurance coverage, and State Farm's attempt to distinguish Lumbermens is unpersuasive. At this point, Mathis' intent is unknown. Further, since all reasonable inferences must be drawn in favor of the non-moving party, and at this point Mathis' state of mind can only be inferred, the Court must find a genuine issue of material fact as to intent to injure.

appeared to lose control of his car as it drove towards the crowd. Dkt. # 41-3, at 7. There are genuine issues of material fact regarding Mathis' state of mind during the incident.

This genuine issue of fact regarding Mathis' intent distinguishes this case from those cited by State Farm. In <u>Equity Insurance Co. v. Garrett</u>, 178 P.3d 201 (Okla. Civ. App. 2008) the court held that a defendant's intentional act of driving her vehicle into another person did not constitute an accident under her insurance policy. <u>Id.</u> at 205. However, in that case, the defendant admitted she intentionally drove her vehicle into the victim, but denied she intended to cause him injury. <u>Id.</u> Thus, there was no issue as to whether the defendant intended to do the act which "naturally and probably" caused the injury. In contrast, in this case defendants have raised a genuine issue of material fact as to whether Mathis intended to hit anyone with his car. Similarly, in <u>Sullivan v. Equity Fire and Casualty Co.</u>, 889 P.2d 1285 (Okla. Civ. App. 1995), the court held that a policy's intentional acts exclusion applied where the parties stipulated that the insured intended to throw a gun at the victim. <u>Id.</u> at 1287.

<u>Allstate Insurance Co. v. Hiseley</u>, 465 F.2d 1243 (10th Cir. 1972), is inapposite. In that case the district court found, after a bench trial, that the evidence did not establish that the insured had the intent to injure the victim by driving his car into the victim's car. <u>Id.</u> at 1244. The Tenth Circuit overturned that finding as clearly erroneous, and held that since "the trial court could only find that [insured] did have an intent to commit bodily injury and property damage . . . the trial court should have held that coverage was expressly excluded." <u>Id.</u> at 1248. If the Court were able to

8

conclusively determine Mathis' intent, Hiseley would be relevant. However, unlike in Hiseley, at this stage there are genuine issues of fact regarding Mathis' state of mind.[4]

Because the Court finds that there are genuine issues of material fact regarding Mathis' intent to drive his car into the crowd and his intent to cause harm, summary judgment in State Farm's favor is inappropriate. Therefore, there is no need to address State Farm's argument that Mathis was not so intoxicated as to lack intent.[5] Dkt. # 38, at 28.

**IT IS THEREFORE ORDERED** that State Farm's Motion for Summary Judgment (Dkt. # 37) is **denied**.

**DATED** this 6th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Further, the Tenth Circuit's focus on the insured's intent to commit bodily injury (as opposed to his intent to hit the victim's car) undermines State Farm's assertion that intent to cause injury is irrelevant to a determination of insurance coverage.

[5] The Court will not speculate as to whether Mathis might raise this defense to his criminal charges. The undisputed evidence tends to show that Mathis had consumed alcohol that night. The Blood Test Officer's Affidavit states that Mathis had "odor associated with an alcoholic beverage on [his] breath/person, red/watery eyes, [and] slurred speech." Dkt. # 43-2, at 1. The police officer who accompanied Mathis to the hospital stated that "his demeanor was very strange." Dkt. # 41-7, at 2. A witness testified at the preliminary hearing in Mathis' criminal case that Mathis was "like in shock." Dkt. # 41-3, at 3. The passenger in Mathis' car testified at the preliminary hearing that Mathis was under the influence of alcohol. Dkt. # 41-3, at 5. This evidence is sufficient to raise a genuine issue of material fact regarding the effect of alcohol on Mathis' state of mind.